**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                          Plaintiff,

                          v.                        1:24-CV-451 (GTS/DJS)

DOUGLAS CLINE, *et al.*,

                          Defendants.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| UNITED STATES ATTORNEY'S OFFICE<br>*Attorney for Plaintiff*<br>445 Broadway, Room 218<br>Albany, New York 12207 | CHRISTOPHER R. MORAN, ESQ. |
| O'CONNELL & ARONOWITZ<br>*Attorney for Douglas Cline and*<br>*Douglas C. Cline M.D., P.C. d/b/a*<br>*Chronic Pain Management*<br>54 State Street, 9th Floor<br>Albany, New York 12207-2501 | KURT E. BRATTEN, ESQ. |
| LAURIE A. MCKENNA<br>Defendant, *Pro Se*<br>Glens Falls, New York 12801 | |
| JOANNE CLINE<br>Non-Party Movant, *Pro Se*<br>Bolton Landing, New York 12814 | |

**DANIEL J. STEWART**
**United States Magistrate Judge**

**DECISION and ORDER**

Before the Court is a Motion to Quash filed by non-party Joanne Cline ("Ms. Cline"), the former spouse of Defendant Douglas Cline ("Dr. Cline"), relative to a subpoena issued by the Government to Adirondack Trust Company ("Adirondack Trust") seeking records of J. Bern Consulting, LLC (the "LLC"), a business that Ms. Cline maintains she solely owns and operates. Dkt. No. 80. Ms. Cline asserts that the subpoena targets a non-party's private business records, is based upon speculation, constitutes an effort to intimidate defense witnesses, and exceeds the scope of permissible discovery. *Id.* In the alternative, Ms. Cline requests that the Court issue a protective order which would cover the documents that have been sought and limit their scope and use. *Id.* The Government opposes the Motion to Quash for a myriad of reasons, including its position that Ms. Cline lacks standing to assert claims of undue burden on behalf of Adirondack Trust and may not oppose the production of records of an independent LLC, and further that the requested documents are relevant to issues being litigated in the present action. Dkt. No. 81. For the reasons that follow, Ms. Cline's Motion to Quash is denied.

By way of background, the present action seeks civil penalties against Dr. Cline as a result of alleged violations of the Controlled Substance Act, codified at 21 U.S.C. §§ 801-971. Dkt. No. 1. As noted in the Court's prior Decision and Order, Dr. Cline's financial status is relevant to the present case, especially in light of his affirmative position that he does not have the financial means to pay a substantive fine, because, if there is a finding of liability, the District Court will be required to consider Dr. Cline's ability to pay in determining an appropriate financial penalty. Dkt. No. 55; *see also* Dkt No. 81-8

at p. 18. The Government was unsatisfied with the financial disclosures provided by Dr. Cline, primarily due to inconsistencies and what the Government perceived to be potentially fraudulent conduct. Dkt. No. 81, Govt's Mem. of Law at pp. 4-7; *United States of America v. Douglas Cline and Joanne Cline*, 1:25-CV-1576 (N.D.N.Y.) (*Cline 2*). At issue are two primary assets of Dr. Cline: a $1.75 million residence located in Bolton Landing, New York; and Dr. Cline's medical practice, Chronic Pain Management (the "Practice").

As to the first, Dr. Cline claims that his entire interest in the Bolton Landing residence was transferred to Joanne Cline as part of the June 23, 2022 divorce agreement, which was entered as a Judgment of Divorce in Warren County Supreme Court on September 2, 2022. Govt's Mem. of Law at p. 5; Dkt. No. 81-8 at p. 18. However, the Government points out that Dr. Cline: continued to pay taxes, homeowners association dues, and insurance on the property; lives intermittently at the house; and secured a home equity line of credit in the amount of $300,000 *four days after* the Judgment of Divorce was entered, but represented to Citizens Bank, N.A. that he was the sole owner of the property. *Cline 2*, Compl. at ¶¶ 32-36, 40, & 42-51.

As to the business, it is asserted that Dr. Cline sold the Practice to Dr. Dimitri Koumanis ("Dr. Koumanis"), but did not receive any money for that asset sale. Gov't Mem. of Law at p. 5. However, the Asset Purchase Agreement provides that Dr. Cline was to receive all profits from the business for a two-year period and Dr. Cline testified that he did consulting work for the Practice. *Id.*; Dkt. No. 81-2 at p. 6; Dkt. No. 81-6 at p. 7. As additional factors, the Asset Purchase Agreement provided that Dr. Koumanis

would utilize the services of the LLC (owned by Ms. Cline) to manage the business, and Ms. Cline testified that Dr. Cline would on occasion make deposits into the LLC's bank account and that the LLC would send payments to Dr. Cline, either directly or through his company, FUSAG Consulting ("FUSAG").  Gov't. Mem. of Law at pp. 4-7; Dkt. No. 81-2 at p. 5; Dkt. No. 81-12 at pp. 3-7.  The issue was further compounded, in the Government's view, because Dr. Cline indicated that he was receiving approximately $120,000 per year for consulting work, but he simultaneously represented in a bank application that he was making $400,000.  Gov't. Mem. of Law at pp. 5-6.

Accordingly, and in light of the aforementioned disparities, the Court understands that the purpose of obtaining the LLC's records from Adirondack Trust is to determine what moneys actually came in from the Practice, and which funds were then distributed to Dr. Cline or any entity that he was actively involved in, including FUSAG.

Federal Rule of Civil Procedure 45 allows a party to serve a subpoena for production of documents on a non-party. FED. R. CIV. P. 45(a)(1).  Of course, subpoenas served on non-parties are subject to the relevance and proportionality requirements of Rule 26(b)(1).  Rule 45 obligates the Court to modify or quash a subpoena that, *inter alia*, "requires disclosure of privileged or other protected information" or "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A).  "[T]he party issuing the subpoena bears the initial burden of demonstrating the relevance of the requested documents," and "the party seeking to quash the subpoena bears the burden of demonstrating that one of the grounds for quashing a subpoena applies." *Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 296 (E.D.N.Y. 2024) (citations omitted).  Ultimately, the decision to grant or deny a motion

to quash lies within the sound discretion of the court. *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003).

As for standing, in general only the recipient of a subpoena may move to quash, but an exception exists where the objecting party claims some personal right, real interest in, or privilege concerning the documents at issue. *Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009). That exception does not appear to apply in the present case. Ms. Cline moves *pro se*, but the financial records in question relate to the LLC that she operates. As the LLC is a separate entity with independent legal status, it cannot be maintained that Ms. Cline, a non-attorney in her *pro se* capacity, has standing to challenge the subpoena or to represent that entity in court. Nor can she assert that the LLC's business records represent her private interests.

Nevertheless, the Court generally retains the authority to manage the discovery process in cases before it. Rule 26 defines the scope of discovery to consist of information that is relevant to a "claim or defense" of the parties and that is "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The specific proportionality factors to be assessed when considering the scope of discovery are: (1) the importance of the issues at stake in the litigation; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the discovery is outweighed by the benefit. FED. R. CIV. P. 26(b). Enveloping the interpretation of Rule 26 is the general standard set forth in Rule 1, which requires that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just,

speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1; *see also* FED. R. CIV. P. 1, Advisory Committee's note to 2015 amendment (noting that "the parties share the responsibility" to employ the rules consistently with the standards of Rule 1, and that "[e]ffective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure"); *Twin Bridges Waste & Recycling, LLC v. Cnty. Waste & Recycling Serv., Inc.*, 2022 WL 5240584, at *2 (N.D.N.Y. Oct. 6, 2022).

Counsel for Dr. Cline has raised concerns regarding the nature of the subpoena in that it relates to an issue—namely, Dr. Cline's income—that, in his view, has already been fully addressed by production of relevant tax returns, and that the subpoena could have the effect of making witnesses feel harassed or targeted. Dkt. No. 78. It is also noted that there is presently pending a separate matter by the Government regarding a claim of a fraudulent conveyance from Dr. Cline to Ms. Cline regarding the transfer of the Bolton Landing residence, and that discovery related to this issue should proceed in that case, and not this one. *Id.*

It is clear to the Court that Dr. Cline's assets and his ability to pay a substantial fine are hotly contested, and unquestionably relevant. This was specifically noted in the Court's previous Decision and Order. Dkt. No. 55. While the Defendant has provided certain information concerning his income, including limited tax returns, other information and documentary evidence appear inconsistent with the Defendant's responses. In light of that, the Court agrees that the subpoena is likely to produce proportionately relevant evidence. Accordingly, the Court denies the Motion to Quash the subpoena. The Court does, however, grant the request that any documents that are

obtained pursuant to the Adirondack Trust subpoena shall be held by counsel as "confidential" under the terms of the August 12, 2024 Protective Order.  Dkt. No. 30.

**WHEREFORE**, it is hereby

**ORDERED**, that non-party Joanne Cline's Motion to Quash the subpoena issued by the Government to Adirondack Trust Company is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**SO ORDERED**.

Dated: January 27, 2026
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge